**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. 2:10-1164 |
| | § | (CV. No. 2:15-360) |
| TODD F. BRITTON-HARR, | § | |
| Defendant/Movant. | § | |

**MEMORANDUM OPINION AND ORDER**

Defendant/Movant Todd F. Britton-Harr (Britton-Harr) filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. D.E. 143. The Government moved to dismiss Britton-Harr's motion (D.E. 150), to which Britton-Harr responded (D.E. 151). The Court thereafter appointed counsel for Britton-Harr and held an evidentiary hearing.

**I. BACKGROUND**

Border Patrol agents stopped Britton-Harr at the Falfurrias Border Patrol checkpoint for an immigration check in December 2010. While an agent was talking to Britton-Harr, a drug canine alerted to Britton-Harr's utility trailer. Britton-Harr was directed to secondary inspection and his trailer was x-rayed.[1] The x-rays revealed anomalies in the trailer, which was searched.

---

[1]. These facts are taken from rearraignment:

MR. THORPE: Yes, Your Honor. If called to do so at trial, the Government would call witnesses who would testify that on December 10th of 2010 at the Falfurrias, Texas, Border Patrol checkpoint, the defendant entered at approximately 6:15 a.m. driving a white Chevy Dually pickup and towing an enclosed utility trailer.

He initially entered the primary inspection lane where a service K-9 alerted to the trailer, and the vehicle was referred to the secondary inspection area. In the secondary inspection area, an x-ray was conducted and ultimately the trailer was searched. Inside the trailer, agents discovered 46 bundles of marijuana wrapped in clear cellophane which had an aggregate weight of 507.36 kilograms.

Mr. Britton-Harr later gave a statement saying he knew he was transporting marijuana. He stated on December 9, 2010, he was instructed to follow unknown males to a parking

Agents discovered 46 bundles of marijuana with a net weight of 465.97 kilograms. When Britton-Harr was arrested, $58,000 in cash was seized from him.[2]

Britton-Harr was read his *Miranda* rights by a Border Patrol agent and waived them. He admitted to transporting marijuana and explained he obtained the marijuana the night before from some unknown men in Weslaco, Texas. Later that day, agents from the Drug Enforcement Administration (DEA) took over the investigation. The agents questioned Britton-Harr after advising him of his *Miranda* rights. Britton-Harr again waived them.

Britton-Harr made his initial appearance in federal court on December 13, 2010. He hired counsel and was granted bond, which allowed him to return home to Florida. He was indicted the following week on a single count of possession with intent to distribute a controlled substance, more than 100 kilograms (465.96) of marijuana. After multiple defense motions for continuance were granted, a pretrial conference was held in December 2011. At that time, the Court was advised that Britton-Harr was being detained on charges in Florida.

In February 2013, Britton-Harr requested appointed counsel. The Court appointed counsel and permitted retained counsel to withdraw. A pretrial conference was scheduled for

---

lot in Weslaco, Texas, where the males loaded bundles of
marijuana into his trailer. He stated he knew he was
transporting between 1,100 and 1,200 pounds of marijuana to be
distributed in Florida.
A laboratory analysis was conducted of the green
leafy substance inside the bundles. It was determined that it
was, in fact, marijuana, and it was determined to have a net
weight of 465.96 kilograms, an amount that infers an intent to
distribute.
That would be the Government's proof, Your Honor.
THE COURT: Mr. Britton-Harr, did you hear what Mr.
Thorpe said about the facts related to this incident?
THE DEFENDANT: I did, Your Honor.
THE COURT: All right. Is it correct?
THE DEFENDANT: Yes, it is, Your Honor.

D.E. 124, p. 13.

2. This information is from Britton-Harr's Presentence Investigation Report (D.E. 93), to which he did not object.

May 20, 2013. Before the conference, Britton-Harr filed two *pro se* motions, a motion to quash

or dismiss the indictment and a motion for production. During the hearing, the Court granted a

further continuance of the pretrial conference. The Government responded in writing to

Britton-Harr's motions, which the Court denied without a hearing.

Britton-Harr filed two additional *pro se* motions: 1) to suppress evidence[3] and 2) for

reconsideration of his previous motions. The Court held a pretrial conference on June 17, 2013,

at which time the motions were set for hearing on June 19 and trial was scheduled for June 24.

Britton-Harr's pretrial motions were based upon his affidavit, which included the

following alleged facts: 1) there were two stops at the Falfurrias checkpoint; 2) the drug dog did

not alert to his trailer; 3) he was released from the checkpoint and pulled away only to be

stopped by a different agent; 4) agents seized the trailer; 5) Britton-Harr denied agents

permission to search, but they searched the trailer anyway; and 6) agents removed metal boxes

from the trailer and x-rayed the boxes. He also claimed he was not provided *Miranda* warnings

before Border Patrol or DEA agents questioned him. Britton-Harr alleged that:

> He explained to DEA Agents the relationship with Confidential Informant Jason
> Browning, Polo and the Mexican Cartel, and DEA Agent Jacobus of Pensacola,
> Florida. During this conversation, Agent Merritt made multiple phone calls
> believed to Florida for verification. Agent Merritt would step outside the trailer at
> the checkpoint, leaving Agent Palm and Mr. Britton-Harr inside alone while he
> made these calls.

D.E. 89, ¶ 11. Britton-Harr claimed he was acting under public authority at the time of his arrest

and was working as a confidential informant for the DEA in Florida.

During the motions hearing on June 19, 2013, Agent Palm with the DEA testified that he

investigated Britton-Harr's claims but found no evidence to support them. D.E. 123, p. 14.

---

3. Britton-Harr's motion to suppress was based upon no probable cause for the stop (no dog alert) and an
unlawful search of his trailer based upon no probable cause. He claimed that he was released from the checkpoint
and then stopped after he left the checkpoint. He also alleged that the agents searched his trailer taking x-rays
without probable cause. Britton-Harr requested suppression of his statements, the marijuana, and all other evidence
that resulted from the unlawful seizure and search.

Britton-Harr sought copies of the videotape taken by security cameras at the Falfurrias checkpoint the day of his arrest. Agent Palm testified that videotapes are routinely reused and taped over, no less than every 30 days and sometimes more often. Britton-Harr's retained counsel never advised the Government that the video would be useful to his defense. *Id*., pp. 30-31.

Agent Palm further testified that Britton-Harr agreed to work for the DEA as a confidential informant beginning the day of his arrest on December 10, 2010. Britton-Harr did not mention Agent Jacobus in Florida then or during his debriefings in May and June 2011. *Id*., p. 33. Agent Palm also testified that he interviewed now-retired Agent Jacobus, who denied working with Britton-Harr in any law enforcement capacity. *Id*., p. 43. In June 2011, the Government began to question whether it could use Britton-Harr as an informant for a number of reasons, including his indictment in Florida on federal mortgage fraud. *Id*., pp. 50–51.

Agent Palm testified that he reviewed the x-rays taken during Britton-Harr's stop. The x-rays from the checkpoint showed the entire trailer with the metal tool boxes inside. *Id.*, p. 16.

Agent Palm further testified that he witnessed another DEA agent read Britton-Harr his *Miranda* rights and witnessed Britton-Harr sign the written waiver of those rights. Agent Palm identified a Border Patrol *Miranda* rights waiver form that bore Britton-Harr's signature from earlier that day. *Id*., pp. 17–18.

Britton-Harr sought information from the DEA regarding Jason Browning. According to Agent Palm, the DEA had no information on Browning other than what Britton-Harr supplied. *Id*., pp. 18–21. Britton-Harr also sought Browning's cell phone. In Florida, Britton-Harr found a cell phone that allegedly belonged to Browning after Browning dropped it. Browning's phone was damaged. Britton-Harr gave the phone to his father to give to Agent Jacobus, who turned the phone over to the Escambia County Florida Sheriff's Department for their technical services

department to retrieve information from the phone, but the phone was too damaged to retrieve anything. *Id*., pp. 23–27. Agent Palm did not know with certainty what happened to the phone after that; it may have been returned to Agent Jacobus. *Id*., p. 27.

Agent Palm testified that Britton-Harr's truck had a built-in GPS unit. He wrote down the addresses stored in the unit, but he did not attempt to download data from the unit. Palm's handwritten notes were provided to the AUSA and to the defense. *Id*., pp. 28–29. By the time of the hearing, three years after Britton-Harr's arrest, Agent Palm believed that the truck had been sold as a forfeiture. *Id*., p. 36. Britton-Harr's previous attorneys did not ask the Government to inspect the GPS unit. *Id*., p. 38.

At the conclusion of the hearing, the Court denied Britton-Harr's motion to suppress and motion for reconsideration. The Parties discussed trial witnesses, and the Government stated it would have Jacobus available to testify. The hearing recessed at 12:02 P.M. Less than 30 minutes after the end of the hearing, the Court was notified that Britton-Harr wanted to plead guilty.

> MR. WOERNER: Your Honor, [Britton-Harr] advises me that he'd like to enter a plea of guilty without a written plea bargain agreement. And I can understand the difficulties given the posture of this case, but, after speaking to him, I think it is possible that he can successfully plead guilty, I guess would be the way to put it. We'd like to give it a shot.

> THE COURT: Okay. I will just tell you before we proceed, I might need to give you a trial if you claim you didn't commit this crime. You're going to have to admit you committed the crime for me to accept your plea.

> THE DEFENDANT: Yes, Your Honor.

D.E. 124, p. 2.

The Court conducted the required Rule 11 colloquy with Britton-Harr, who testified he understood the charges against him, understood his trial rights and waived them, understood the range of punishment and generally how the guidelines worked, had not been promised a particular sentence, agreed with the factual basis as stated by the government, and then pleaded

guilty to the Indictment. During the plea colloquy, the Court admonished Britton-Harr that "[T]here are only limited circumstances in which you or the Government can appeal the sentence that I impose." *Id*., p. 10. The Court reminded him of his right to a jury trial[4] and that if he pled guilty he would be giving up that right and other rights as explained.[5] The Court accepted his guilty plea.

The Probation Department prepared a Presentence Investigation Report (PSR). Britton-Harr's base offense level was calculated at 28 based upon 465.96 kilograms of marijuana. After credit for acceptance of responsibility, his final offense level was 25. Britton-Harr had two previous convictions resulting in a criminal history category of III. His sentencing guideline range was 70 to 87 months' imprisonment, with a minimum statutory sentence of 60 months.

At sentencing, defense counsel argued for a downward variance based upon

---

4.   THE COURT: You have, of course, a right to plead not guilty
which entitles you to have a trial by jury. We've had
discussions about that. I just told you a while ago that I'm
ready to go next week and give you a trial by jury. Twelve
people would be selected and they will determine whether you're
guilty or not.
At that trial, you have a right to be represented
by a lawyer, such as you have here today and always. One would
be appointed if you couldn't afford one. At the trial, your
lawyer, acting on your behalf, has the right to cross-examine
witnesses called by the Government. *I've talked to you earlier
about you calling witnesses. You have that right. You can
call witnesses. And sometimes they do not want to come to
court to testify, so you can have subpoenas issued to force
them to do that.* So you have the same right as the Government
in that regard.

*Id*., p. 11 (emphasis added).

5.   THE COURT: In a couple of moments, I'm going to ask you here
in open court how you plead to these charges. And if you
persist at that time in entering a plea of guilty, you will
have waived your right to a trial by jury as well as all the
other rights that I just described. Do you understand that?
THE DEFENDANT: Yes, I do, Your Honor.

*Id*., p. 12.

Britton-Harr's military service[6] and on the grounds that the seriousness of his criminal history was overstated. Counsel requested a 60-month sentence and for it to run concurrently with his Florida sentence. The Government recommended a low-end guideline sentence of 70 months, which the Court imposed to run partially concurrent with the Florida sentence, to be followed by four years' supervised release.[7] The Court advised Britton-Harr that he had the right to appeal and the right to appointed counsel on appeal. Defense counsel requested appointment of appellate counsel and permission to withdraw, which the Court later granted. Britton-Harr signed and filed a *pro se* notice of appeal that he brought to court.

Britton-Harr filed a number of post-judgment motions that were received by the Clerk and docketed on August 26, 2013, including: 1) Motion to Withdraw Guilty Plea; 2) Motion for Newly Discovered Evidence/Appeal; 3) motion pursuant to Rule 58(a), (d); 4) Motion to Appoint New Counsel; 5) Motion for Evidentiary Hearing; and 6) motion requesting the docket sheet and copies of transcripts. D.E. 103–108. The Court had previously admonished Britton-Harr during the July 19, 2013, hearing that he was not to file additional *pro se* motions because he was represented by counsel; thus, the Court did not rule on the motions.

On appeal, Britton-Harr argued that his guilty plea was unknowing and involuntary because the Government destroyed exculpatory evidence. The Fifth Circuit rejected that ground on two bases: 1) there was nothing in the record to undermine the trial court's factual determination that the government did not intentionally destroy evidence, and 2) Britton-Harr's guilty plea foreclosed any appeal of pretrial matters. Britton-Harr also requested remand for the district court to consider his post-trial motions. The Fifth Circuit held that the motions were unauthorized motions that the trial court did not have jurisdiction to entertain and that

---

6. Britton-Harr attended the Naval Academy and was honorably discharged from the Navy.
7. This Court later reduced Britton-Harr's sentence to 60 months pursuant to Amendment 782 of the Sentencing Guidelines Manual. D.E. 135.

Britton-Harr's notice of appeal divested this Court of jurisdiction to consider those motions. The Fifth Circuit affirmed Britton-Harr's conviction and sentence on September 16, 2014. *United States v. Britton-Harr*, No. 13-40911 (5th Cir. Sept. 16, 2014) (per curiam)(unpublished).

After the Fifth Circuit rejected his appeal, Britton-Harr filed a motion to correct the record requesting that this Court change the docket dates on his various post-trial motions to reflect the dates on which they were signed. The Court denied the motion to correct. The Clerk received Britton-Harr's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 on August 17, 2015. It is timely.

## II. MOVANT'S ALLEGATIONS

Britton-Harr raised multiple challenges to his conviction:

> 1) actual innocence on the grounds of public authority;
>
> 2) violation of due process on the grounds that he was "repeatedly denied evidence," denied the right of confrontation, and denied grand jury transcripts;
>
> 3) ineffective assistance of counsel, who failed to ensure the Border Patrol videos were preserved and failed to represent Britton-Harr at the forfeiture hearing;
>
> 4) ineffective assistance of counsel, who misled Britton-Harr about his right to appeal the denial of his pretrial motions, resulting in an involuntary guilty plea;
>
> 5) ineffective assistance of counsel, who failed to file motions on Britton-Harr's behalf, and
>
> 6) ineffective assistance of appellate counsel, who failed to point out the error in the docketing of Britton-Harr's post-judgment motions.

The Government responded that Britton-Harr's claims of public authority, actual innocence, and deprivation of the grand jury transcripts are procedurally barred and were waived by his guilty plea. The Government further argues that the record refutes Britton-Harr's claims of ineffective assistance of counsel and that those claims are "patently frivolous."

## III. ANALYSIS

**A. Involuntary Plea**

Britton-Harr contends that his guilty plea was induced by counsel's misrepresentation that he would be able to appeal the Court's denial of his pretrial motions. It was on this ground that the Court appointed counsel and held an evidentiary hearing.

**1. Evidentiary hearing**

Britton-Harr and his mother, Robin Ann Harr, testified that appointed counsel advised them that Britton-Harr's open plea allowed him to appeal the denial of his pretrial motions. He and his mother had earlier discussed and rejected a proffered plea agreement that included a waiver of his right to appeal or file a § 2255 motion. Britton-Harr testified that he would not have entered a guilty plea if he had known he would not be able to appeal the Court's rulings on pretrial motions. D.E. 161, p. 10. Britton-Harr further testified that during his meeting with counsel on June 19, 2013, counsel allegedly told him that an open plea would not waive his appellate rights. After talking with counsel, Britton-Harr decided to plead guilty because he did not have the evidence to support his defense. "I said over and over again I could not go to trial without evidence. I wasn't allowed to bring witnesses in from Florida . . ."*Id*., pp. 7, 14.

Britton-Harr testified that he believed that he preserved his right to appeal the denial of his pretrial motions. In support, Britton-Harr pointed to his notice of appeal that included the following, "Comes Now Todd Britton-Harr, the Defendant, invoking the liberal construction principles of Haines v. Kerner, provides his notice to appeal the conviction, sentence and *all pre-trial rulings*." D.E. 99 (emphasis added).

Britton-Harr also supported his claim with the testimony of Mrs. Harr, who testified that she asked counsel by email to obtain transcripts from the hearings on June 17 and June 19, 2013. Her testimony suggested that there was no basis to request transcripts other than for appeal; however, her email stated that the transcripts were for their records. *See* Def. Exh. 2, n.2.[8]

Counsel testified that he met with Britton-Harr after the hearing the morning of June 19, 2013, and they discussed Britton-Harr's appellate rights. When asked whether he ever told Britton-Harr that he had to plead guilty to appeal the denial of his *Brady* motion, counsel responded:

> I did not. I told him basically that he had the choice of waiving virtually all of his appellate and post-conviction rights if he did a plea bargain or he had the option of doing an open plea. And my intent was to get the government [] to agree to see if he would still go with a three-level decrease for accepting responsibility.

D.E. 161, pp. 28-29.

Counsel did not recall discussing with Britton-Harr what he wanted to appeal:

> As far as appealing the motions go, I had explained to him numerous times and I think as the Court had explained to him, there was no legal merit to them whatsoever and pursuing an appeal of those motions was not going to result in any kind of success. So I frankly thought he had given up on that idea.

---

8. Ms. Harr's email is reproduced below as it was sent:

Mark,

Todd has asked that you get the recording of the court for June 17 and 19th. *I agree with Todd we want these for our records*. I find it very odd that you felt the need to bring up in court that Mr. Kennedy had in his very lacking file, a memo for dismiss of counsel. Why you needed to bring that out in court I do not know! I would like for you to contact the court reporter and request the report please let me know when you have the recordings. The right to file a 2255 better be in this plea that you so need my help to convince my son to agree to!! Kennedy should be ashamed of himself!! To say the least I am ashamed I allowed myself to be used as you have by you, the department of dirty works is all I can say about this case.

Steve and I will continue to get what is needed for the PSR and letters to the Judge. Regards I may not have your education in level but it clear to me what is going on this thin blue line .

Regards ,
Robin Harr, dated June 21, 2013, 2:37 A.M.

*Id.*(emphasis added).

*Id.*

The Court asked counsel, "Did you ever advise [Britton-Harr] that by entering a plea of guilty without a plea agreement that he would be able to appeal his pretrial motions–his pretrial motions and my ruling on them?" Counsel responded, "I don't believe I told him that." *Id.*, p. 35. "Did he ever ask you specifically as to whether he could appeal my ruling on his pretrial motions even though he was entering a plea agreement?" the Court asked, to which Counsel responded, "I don't recall him asking me that." *Id.* Counsel testified that he did not recall whether he read Britton-Harr's notice of appeal. *Id.* p. 30.

### 2. Legal Standard

A constitutionally valid guilty plea must be knowingly, voluntarily, and intelligently made. *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). In determining the voluntariness of a plea, the court considers all relevant circumstances, including whether the defendant: (1) had notice of the charges against him; (2) understood the constitutional protections he was waiving; and (3) had access to competent counsel. *United States v. Washington*, 480 F.3d 309, 315 (5th Cir. 2007). In other words, a guilty plea is valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).

The *Hill* Court held that *Strickland's* two-part test applies to claims that a guilty plea is involuntary based upon ineffective assistance. The "'prejudice,' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. To satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58. To prevail, a defendant must prove both

prongs of the *Strickland* test. *Id.*

### 3. Analysis

Britton-Harr's final pretrial conference occurred on June 19, 2013, with trial scheduled for the following week. He was presented with three choices: (1) proceed to trial, (2) plead guilty with a written plea agreement that waived his right to appeal and to collaterally attack his conviction, or (3) enter a guilty plea without a plea agreement. Britton-Harr's motion states that he asked counsel about a conditional guilty plea and counsel responded that such a plea was not allowed.[9]

---

9. Q Did you discuss the possibility of a conditional plea with him?
A I don't remember exactly what we discussed. His 2255
indicates that I told him he could not do a conditional plea.
His counsel basically represented to me that that didn't mean
conditional plea in the sense of a conditional plea under
Rule 11 and that he was referring to an interlocutory appeal of
his -- I guess the motions denial. And I don't remember for
certain what it was we discussed. He asserts that I told him
he couldn't do a conditional plea, which I'm sure I would have
told him that. I have no doubt. . . .
Q I think it was your testimony that you have no independent
recollection as to whether you discussed the concept of
conditional plea or what an open plea allows you to appeal or
not allows you to appeal?
A I don't have any independent recollection of it. I would
have told him -- if he would have asked could he do a
conditional plea, I probably would have asked Mr. Thorpe about
it. But the bottom line is I'm not aware that the U.S.
Attorney's Office here is going to agree to a conditional plea.
I have never seen them agree to a conditional plea. . . .
I didn't discuss the conditional plea as being an option. That wasn't in my
opinion an option. . . .
THE COURT: Did you tell him in order to enter a
conditional plea, preserving his right to appeal the motion to
suppress and other pretrial rulings, it would require the
approval of the government as well as the Court?
THE WITNESS: I would have told him that because that
is the requirement. If he asked me about it, I would have
said, well, the government is not going to consent to it and
the Court would have to accept it too.
He indicates that I told him it wasn't possible,
which is what I would have told him, but I don't remember
specifically going over the requirements of a conditional plea
under Rule 11 with him though. I just don't know if he asked
me that.

Britton-Harr's complaint in this proceeding originally stated: "The defendant's plea was unknowingly [sic] because Attorney Woerner told him he had to plead guilty in order to appeal the denied *Brady* issues . . . Woerner clearly knew that a guilty plea barred such an appeal of *Brady* issues and ineffective assistance under 5th Circuit precedent." D.E. 143, pp. 8, 20. As amended, his claim stated: "Mr. Britton-Harr's Guilty Plea Was Not Knowing and Voluntary. In support of this ground, Mr. Britton-Harr submits that he entered his plea under the incorrect belief that he would be able to appeal the Court's denial of his pretrial motions." D.E. 157.

During the hearing, in response to counsel's question, "Would you have agreed to enter a plea had you been told that you would not be able to appeal the judge's rulings on the pretrial motions?" Britton-Harr's testimony was "No, sir. I believe the *Brady* issues are paramount to my defense." 5/18/2016 Hrg. Tr., D.E. 161, p. 10.

Even if Britton-Harr could establish that counsel actively misled him about the effect of his guilty plea on appeal of the denial of his pretrial motions, Britton-Harr must still prove that he was prejudiced. He has not alleged he would have gone to trial, only that he would not have entered a guilty plea.

To establish prejudice, a defendant may not simply assert that he would have gone to trial but for counsel's allegedly ineffective assistance. *See United States v. Batamula*, 823 F.3d 237, 240-41 (5th Cir. 2016) (en banc); *United States v. Kayode*, 777 F.3d 719, 725-26 (5th Cir. 2014). The assessment of prejudice "will depend in part on a prediction of what the outcome of the trial might have been." *Batamula*, 823 F.3d at 240 (citing *Kayode*, 777 F.3d at 725). In *Batamula*, the defendant argued that he would have gone to trial if he had known he would be deported if he pleaded guilty. The *en banc* court held that Batamula did not establish prejudice. He was admonished of the deportation consequences during the plea colloquy, the evidence against him was substantial, and he was unable to demonstrate that going to trial would have given him a

reasonable chance at a more favorable result. *Id.* at 240. The *Kayode* court considered the totality of the circumstances to determine whether Kayode demonstrated prejudice from counsel's failure to advise him of the deportation consequences of his guilty plea. *Kayode*, 777 F.3d at 725. The court considered Kayode's failure to state that he would have gone to trial (he only stated that he would not have pleaded guilty), his likelihood of success at trial, the risks of trial if convicted compared to the risks of a plea, whether the defendant attempted to withdraw his guilty plea, and whether he received any admonishments on deportation. *Id.* at 725-30.[10] The court found that Kayode received admonishments regarding deportation, had little or no chance of prevailing at trial because the evidence against him was substantial, and his sentence after trial was likely to be far greater due to the 44 counts against him. *Id.* The plea agreement included dismissal of all but three counts. *Id.* at 726.

Like Kayode, Britton-Harr does not claim he would have gone to trial if he had known that his appellate rights were limited. Britton-Harr was warned that his appellate rights were limited, but he did not ask any questions about the limitation. The evidence against Britton-Harr was substantial, including the hidden marijuana and his statements at the time he was arrested. If convicted at trial, Britton-Harr would have been unlikely to receive credit for acceptance of responsibility, which would have increased his sentencing guideline range from 70 to 87 months to 97 to 121 months. Although Britton-Harr filed a motion to withdraw his plea, it was received by the Clerk after judgment and after Britton-Harr filed his notice of appeal. On balance, a rational defendant faced with a near certainty of conviction and the prospect of serving an additional 27 months or more of imprisonment would not be reasonably likely to go to trial, especially when the only benefit was securing the appellate right to challenge the pretrial rulings

---

10. The *Kayode* court also considered cases in which the prejudice alleged was having to stand trial, rather than waive it due to counsel's failures relating to plea bargains. *Id.* at 724 (citing *Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (2012) and *Missouri v. Frye*, 132 S.Ct. 1399, 1409 (2012)). In those cases different proof is necessary on the issue of prejudice.

here. The alleged *Brady* material Britton-Harr sought simply did not exist any longer. An appeal could not have restored the Government videotapes from the checkpoint or his truck's GPS. The evidence presented to this Court in support of Britton-Harr's motion consisted only of his affidavit. The controverting evidence was significant, including documentary evidence, contemporaneous law enforcement reports, and testimony of one of the agents involved, all of which directly contradicted Britton-Harr's affidavit. He was also advised by counsel that the motions had no merit.

Britton-Harr admitted during the plea colloquy that he had ignored counsel's previous advice, but in pleading guilty was now listening to his advice:

> THE COURT: In fact, you dismissed one that
> represented you for some time. What about Mr. Woerner? I
> appointed him after you fired your last lawyer. Are you
> satisfied with his representation?
> THE DEFENDANT: Yes, Your Honor. *He stated the law.*
> *I've been real hardheaded in trying to do things, but I was,*
> *you know, listening to his advice now, Your Honor.*
> THE COURT: You may wonder why I appointed Mr.
> Woerner. I appointed him because he's a bulldog. He's not
> scared of anything or anyone. He's certainly not reluctant to
> do whatever it takes to legally represent someone in this Court
> and he's strong-minded, strong-willed, and he's tough. And
> that's why I appointed him to represent you, because I knew
> that you had been difficult in the past. But you're telling me
> you're pleased with what he's done for you?
> THE DEFENDANT: Yes, Your Honor.

D.E. 124, p. 6 (emphasis added).

The Court finds that Britton-Harr has not established prejudice under the totality of the circumstances. *See Kayode*, 777 F.3d at 725; *Batamula*, 823 F.3d at 240–41; *accord Pacheco v. United States*, 2016 WL 4736087 (W.D. Tex. Jul. 1, 2016) (slip op.) (in challenge to voluntariness of guilty plea, district court found defendant did not establish prejudice under totality of circumstances).

## B. Actual Innocence

Britton-Harr claims that he was actually innocent of drug trafficking because he was acting under public authority. Britton-Harr's current claim is directly refuted by his testimony during the plea colloquy:

> THE COURT: Okay. To the charges in Count 1, how do you now plead, guilty or not guilty?
> THE DEFENDANT: Guilty, Your Honor.
> THE COURT: To make sure that I understand your position in this case, and I may have been maybe confused or unclear about exactly what the manner in which you were defending these charges, but *do I understand that, at this point, you either do not assert the defense or you have abandoned the defense that this drug transaction was done under the control and with the authority of the DEA?*
> THE DEFENDANT: *Yes, Your Honor, I abandon that defense*.

D.E. 124, pp. 14–15 (emphasis added). Courts give great weight to a defendant's statements during the plea colloquy. *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) ("Solemn declarations in open court carry a strong presumption of verity."); *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002); *see also United States v. Abreo*, 30 F.3d 29, 31 (5th Cir. 1994) (placing great weight on defendant's statements during plea).

In addition, the Supreme Court has not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence. *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1931 (2013); *Herrera v. Collins*, 506 U.S. 390, 404–405 (1993). In *McQuiggin*, the Court held that a convincing plea of actual innocence can overcome the AEDPA statute of limitations, even when equitable tolling is not available. *McQuiggin*, 133 S.Ct. at 1931. "Actual innocence" in this context refers to factual innocence and not mere legal sufficiency. *Bousely v. United States*, 523 U.S. 614, 623–624 (1998). "[A] petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id*.

Britton-Harr did not produce any new evidence, only a letter from Greg Grover of Bad Karma LLC in Pensacola, Florida. D.E. 143-1, p. 8. Grover states that he interviewed unspecified witnesses who supported Britton-Harr's version of events. The letter is hearsay, not evidence, and cannot be considered. *United States v. Francischine*, 512 F.2d 827, 829 (5th Cir. 1975) (issues of fact in a § 2255 proceeding are "resolved under the Federal Rules of Evidence"). Moreover, post-conviction claims of uncalled witnesses are viewed with skepticism. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Britton-Harr's claim of actual innocence is denied.

### C. Claims Procedurally Barred

Britton-Harr argues that his due process rights were violated when the Court denied him access to the Border Patrol videotapes from the date of his arrest and access to the grand jury transcripts.[11] That claim was decided against him on appeal and is therefore procedurally barred. *See United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions.").

Britton-Harr argues that his appellate counsel provided ineffective assistance by failing to point out the alleged error in the Court's docketing of Britton-Harr's *pro se* motions. The Fifth Circuit held that "Britton-Harr's notice of appeal divested the court of jurisdiction over his post-conviction motions." D.E. 131, p. 2. Because the Fifth Circuit already decided these issues, Britton-Harr may not seek relief in his § 2255 motion. *See Kalish*, 780 F.2d at 508.

---

11.  The evidence Britton-Harr sought—videotapes, the truck GPS, and Browning's phone—were all determined to be unavailable because, in the routine course of events, the tapes were reused, the truck was forfeited, and the phone had never been in the possession of the local DEA and the agent was unable to determine its whereabouts. The phone was never part of this investigation, but part of events that occurred separately in Florida.

**D.  Ineffective Assistance of Counsel**

**1.  Standard**

An ineffective assistance of counsel allegation presented in a § 2255 motion is properly analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 689 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his or her counsel's performance was both deficient and prejudicial. *Id.* This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001).

In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689–90. With regard to the prejudice requirement, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one."); *Carter*, 131 F.3d at 463.

**2.  Failure of retained counsel to preserve evidence**

Britton-Harr contends that retained counsel failed to request the checkpoint videotape, failed to preserve his truck and its GPS, billed for but failed to file a motion to suppress, and failed to secure a statement from Agent Jacobus or to document a meeting with Jacobus in

January 2011. Counsel also allegedly failed to procure a listening device to allow Britton-Harr to document Jason Browning's conduct. In addition, Britton-Harr alleged that his attorney Kennedy had a conflict of interest because Browning allegedly telephoned retained counsel after his arrest, but before Britton-Harr was allowed to call his wife to tell her about his arrest. Britton-Harr allegedly mentioned this at an unidentified hearing.

At the time counsel should allegedly have performed these duties—within the first six months of his representation of Britton-Harr—Britton-Harr was cooperating with the DEA and attempting to work with them as a confidential informant. Britton-Harr does not allege that he advised his counsel of the importance of these items or of his alleged defense. Counsel's strategy was apparently for Britton-Harr to avoid charges or to earn a decrease in his sentence through substantial assistance. "There is a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." *Strickland*, 466 U.S. at 690. "Such decisions are 'virtually unchallengeable.'" *Id*. at 691.

Britton-Harr does not specify the subject or basis of the motion to suppress he claims counsel should have filed. As a result, this portion of his claim is conclusory and insufficient to state a constitutional violation. *United States v. Woods*, 870 F.2d 285, 288 n. 3 (5th Cir. 1989).

Britton-Harr contends that counsel was contractually obligated to represent him at the forfeiture hearing, but he has produced no evidence to support that allegation. That claim is not cognizable in a § 2255 motion because it is not a constitutional claim. Even if counsel was obliged to resist forfeiture as part of his constitutional obligations, Britton-Harr has not established prejudice from the absence of the truck's GPS data. He claims it recorded all of his movements related to drug trafficking, but he does not explain how that information relates to his defense of public authority.

As to counsel's alleged conflict of interest, the available transcripts do not support Britton-Harr's claim.

Finally, Britton-Harr does not provide any authority for his claim that the professional responsibilities of an attorney include providing a listening device to record conversations with an alleged confidential informant.

Britton-Harr has not met his heavy burden to establish that retained counsel's representation fell below reasonable professional standards, nor has he demonstrated that counsel's alleged deficiencies caused him prejudice.

### 3. Failure of counsel to file motions, investigate, and secure appellate rights

Britton-Harr argues that appointed counsel provided ineffective assistance because he: (1) failed to file motions on Britton-Harr's behalf; (2) misinformed Britton-Harr that an open plea preserved appeal of the denial of Britton-Harr's pretrial motions;[12] (3) failed to investigate evidentiary issues regarding the digital photographs, X-rays, Greg Grover's investigation, and the destruction of evidence; (4) failed to use a subpoena to acquire witness testimony; (5) failed to object to Britton-Harr's PSR and the use of his domestic violence conviction to calculate his criminal history category; and (6) allegedly told Britton-Harr's parents that counsel thought he was guilty and failed to review evidence with Britton-Harr.

#### a. Failure to file pretrial motions

Britton-Harr complains that counsel failed to file any motions on his behalf, but he does not specify the motions that counsel should have filed. "The filing of pretrial motions falls squarely within the ambit of trial strategy." *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1983). Counsel has no obligation to file frivolous motions.[13] *See United States v. Gibson*, 55

---

12. This complaint was addressed in Part III(A).
13. The transcript of the hearing on the motion to suppress is illustrative of the meritless nature of the motion. The Government produced Agent Palm, who witnessed Britton-Harr being Mirandized by another agent and witnessed Britton-Harr's signature on a *Miranda* waiver form. Agent Palm also produced the Border Patrol

F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions."); *Clark v. Collins*, 19 F.3d 959, 965-66 (5th Cir. 1994) (holding counsel was not ineffective for his failure to file a legally meritless objection).

Britton-Harr's failure to specify the nature of the motions counsel should have filed is also fatal to his claim. A movant must state the facts underlying his claims of ineffective assistance of counsel. Conclusory allegations on critical issues in a § 2255 proceeding are insufficient to raise a constitutional issue. *Woods*, 870 F.2d at 288 n. 3; *see also United States v. Jones*, 614 F.2d 80 (5th Cir. 1980) (Failure to state specific facts "is insufficient to state a constitutional claim."). Because Britton-Harr has not sufficiently stated facts to support his claim, he has not met his heavy burden to overcome the presumption that counsel rendered reasonably effective assistance.

### b. Failure to investigate and review evidence with him

Britton-Harr's claim that appointed counsel failed to investigate overlaps, to some extent, with his previous claim on pretrial motions. As to Britton-Harr's claim that counsel ignored a Florida private investigator who "was working to corroborate Defendant's innocence," Britton-Harr does not specify the evidence or witnesses that Mr. Grover located.

"This Court has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). "[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a

---

*Miranda* waiver form with Britton-Harr's signature.

particular defense." *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). For counsel's alleged failure to work with Mr. Grover to be prejudicial, Britton-Harr is required to specify the evidence that Mr. Grover obtained and how it would have furthered Britton-Harr's defense. He has not done so.

Britton-Harr also alleged that the digital footprints on the photographs provided do not match the timeline on various documents used by the Government during the June 19, 2013, hearing. He claims that counsel should have investigated that discrepancy and should have reviewed the evidence with him before the hearing. Britton-Harr also alleged a conspiracy to set him up based on these alleged discrepancies; however, he admitted at the time of his arrest that he knew he was transporting marijuana and admitted the elements of the crime with which he was later charged. His complaints about being "set-up" have to do with his stop at the checkpoint, not with his transport of marijuana, but Agent Palm testified that the sole basis for the search of Britton-Harr's trailer was the dog alert, not a "tip." Britton-Harr produced no evidence to controvert Agent Palm's testimony and thus no basis for his claim that counsel's failure to investigate prejudiced him.

Britton-Harr also alleges that counsel failed to subpoena witnesses. For this conduct to be prejudicial, Britton-Harr must identify the witnesses and specify the substance of their testimony. Moreover, pretrial depositions in criminal cases are highly unusual. Rule 15 of the Federal Rules of Criminal Procedure provides for their use only in "exceptional circumstances." *United States v. Lucas*, 516 F.3d 316, 348 (5th Cir. 2008). "The words 'exceptional circumstances' bespeak that only in extraordinary cases will depositions be compelled. Such extraordinary circumstances include, for example, situations where a potential deponent would not likely be able to return to the United States." *Id*. (internal citations and quotations omitted). Britton-Harr has not described any exceptional circumstances that would justify the use of pretrial witness subpoenas to secure

testimony, nor has he identified the witnesses, relevance, or materiality of the unnamed witnesses' testimony. Britton-Harr has not met his burden to demonstrate that counsel's alleged failures fell below reasonable professional assistance or prejudiced him.

### c. Counsel's failure to object to the PSR

Britton-Harr argues that counsel was ineffective for failing to object to the PSR, specifically the use of his Florida conviction for domestic battery. He complains that the domestic battery crime never took place and has provided an affidavit from his wife in support.

Britton-Harr was charged with felony battery/domestic violence by strangulation in April 2010. He pled no contest and was placed on pretrial intervention. When Britton-Harr was arrested in the present action, his Florida battery adjudication was withheld, and he was placed on probation. His probation terminated before he was sentenced in this case. Britton-Harr did not deny his arrest and plea.

The Sentencing Guideline Manual defines a prior sentence as "any sentence previously imposed upon adjudication of guilty, whether by guilty plea, trial, or a plea of *nolo contendere*, for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). A defendant who received a diversionary disposition that involved a judicial determination, even after a *nolo contendere* plea, is counted for criminal history points. *Id.*, app. n.9. *United States v. Giraldo-Lira*, 919 F.2d 19, 22 (5th Cir. 1980) (approving use of deferred adjudication probation after a plea pursuant to U.S.S.G. § 4A1.2(a)(1). Britton-Harr provided no legal basis for counsel to object to the use of his prior sentence.[14] Britton-Harr has not established that any objection to his domestic violence conviction would have been meritorious.

### d. Counsel's claim that Britton-Harr was untruthful

---

14. If Britton-Harr sought to collaterally attack the legitimacy of the final judgment in the Florida domestic battery case, he was required to do it in that case. *Daniels v. United States*, 532 U.S. 374, 382 (2001); *Custis v. United States*, 511 U.S. 485, 497 (1994); *United States v. Longstreet*, 603 F.3d 273, 277 (5th Cir. 2010).

Finally, Britton-Harr argues that he and counsel had a difficult relationship. He also claims that counsel told his parents that he was guilty and not being truthful. However, Britton-Harr has not explained how counsel's alleged belief and statements prejudiced his defense.

## IV.    CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Britton-Harr has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.   *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483– 84). As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis

added).

Based on the above standards, the Court concludes that Britton-Harr is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## V.  CONCLUSION

For the foregoing reasons, the Government's motion to dismiss (D.E. 150) is **GRANTED**, and Britton-Harr's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 143) is **DENIED**. He is also **DENIED** a Certificate of Appealability.

It is so **ORDERED** this 21st of August, 2017.


_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE